**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DALLAS D. STANDRIDGE**                                                              **PLAINTIFF**

V.                                **CASE NO. 4:11CV00794 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                      **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dallas Standridge appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      Background**

On March 22, 2010, Mr. Standridge protectively filed an application for SSI, alleging an onset date of November 28, 2009, due to his inability to lift, bend, or climb; lack of depth perception; depression; anxiety; and blindness in his right eye. (Tr. 141-45, 178) Mr. Standridge's claims were denied initially and upon reconsideration. At his request, an Administrative Law Judge ("ALJ") held a hearing on May 10, 2011, at which Mr. Standridge appeared with his attorney. (Tr. 23) At the hearing, the ALJ heard testimony from Mr. Standridge and Jim B. Spragins, a vocational expert ("VE"). (Tr. 24-53)

The ALJ issued a decision on July 5, 2011, finding that Mr. Standridge was not disabled under the Act. (Tr. 10-19)  On September 19, 2011, the Appeals Council denied Mr. Standridge's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Standridge was thirty-six years old at the time of the hearing. (Tr. 26)  He had experienced back pain since age sixteen when he hurt his back moving a motor in his garage. (Tr. 29)  He had completed the eighth grade at age seventeen, but did not return to school because of back pain. (Tr. 27, 29)  He had suffered a gunshot wound to the lower calf of his left leg, and had been involved in three automobile accidents. (Tr. 30)

Mr. Standridge reported no earnings for the years 2005 - 2009. (Tr. 30) Before that, he had done logging and firewood work. (Tr. 30-31)  He had worked for several weeks as a forklift operator in late 2009 into early 2010, but complained of problems with his depth perception and pain in his back. (Tr. 34)  He had also worked in recent years as a handyman for a neighbor, earning approximately $80 - $100 a month. (Tr. 48)

Mr. Standridge testified that he mows his one-quarter-acre yard, taking breaks as necessary. (Tr. 37, 42-43)  He helps his wife with the laundry and helps his wife put away the dishes. (Tr. 37, 41)  He vacuums some. (Tr. 41)  He cooks, but sits while cooking. (Tr. 42)  He feeds and waters his six dogs. (Tr. 43)  He drives as necessary. (Tr. 44)  He said that he spends five to six hours a day watching television. (Tr. 47)

Mr. Standridge testified that he could walk only 75-100 yards before having problems with his back or legs, and that bending and lifting anything hurt his back. (Tr. 37) He also testified that he "feels like somebody is standing there stabbing me in the back with an ice pick," even when sitting, and that he hurts constantly. (Tr. 38-39) Mr. Standridge was taking no prescription or over-the-counter medication for his pain. (Tr. 45) He also testified that he got depressed fairly easily. When depressed, he did not feel like doing anything. (Tr. 36)

## II.  Decision of the Administrative Law Judge

The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g) (2005), 416.920(a)-(g) (2005).

The ALJ found that Mr. Standridge had not engaged in substantial gainful activity since his alleged disability onset date and that he had the following severe impairments: vision impairment and back pain. (Tr. 12) The ALJ also found, however, that Mr. Standridge did not have an impairment or combination of impairments meeting or

equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 12-13) The ALJ found that while Mr. Standridge alleged depression, leg pain, and foot pain, those conditions were not objectively corroborated and only minimally affected his ability to perform work-related activities. (Tr. 12)

Taking into account the entire record, the ALJ determined that Mr. Standridge had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), except that he could only lift and carry 20 pounds occasionally and 10 pounds frequently; could sit, stand or walk for about 6 hours in an 8-hour workday; could frequently climb, balance, crawl, kneel, stoop, and crouch. (Tr. 13) He also determined that Mr. Standridge could not perform work requiring excellent vision, but that he could see well enough to avoid hazards in the workplace and to distinguish between shapes and colors of objects, such as screws, nuts, and bolts. (Tr. 13) After considering VE testimony, the ALJ determined that Mr. Standridge could perform the jobs of housekeeping, fast food worker, and sales clerk, all of which existed in significant numbers in the national economy. (Tr. 18) Accordingly, the ALJ found that Mr. Standridge was not disabled. (Tr. 18)

### III. <u>Analysis</u>

#### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v.*

*Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

B.  *Plaintiff's Arguments for Reversal*

Mr. Standridge claims that the ALJ's decision was not supported by substantial evidence because: (1) the ALJ erred in failing to fully and fairly develop the record; (2) the ALJ erred at step two by not evaluating the severity of Mr. Standridge's alleged mental impairment using the Special Technique; (3) the ALJ erred in the evaluation of Mr. Standridge's subjective complaints; and (4) the ALJ erred at step five in his residual functional capacity determination. (#10)

C.  *The Record*

In an apparent concession that the current record does not support his claims, Mr. Standridge argues that the ALJ failed to adequately develop the record. (#10, p.10) With respect to his vision impairment, he argues that there is no indication that the ALJ authorized either a return examination by the treating source, or a new examining source

for assessments of his impairments. (#10, p. 6) He points out that the last treating-source medical evidence from Dr. Uwaydat, his eye surgeon, states that he should return for further testing to assess the level of vision in his right eye. (#10, p. 6)

With respect to his spinal injury, Mr. Standridge notes that the ALJ relied only on the treating source, but did not ask the treating physician's opinion as to the RFC. Mr. Standridge additionally notes that the ALJ gave little weight to the state agency consultants or the orthopaedic consultative examiner. (#10, p.7) He asserts that there was no evidence to support the ALJ's RFC. (#10, p.7)

An ALJ has a duty to develop the record fairly and fully, independent of the claimant's burden to press his case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citation omitted). The duty to develop additional evidence arises when medical source evidence is inadequate to determine disability. 20 C.F.R. §§ 404.1512(e), 416.912(e); *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006). A fully and fairly developed record must contain enough evidence to determine the effect of a claimant's impairment on his ability to work. *Byres v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). Reversal due to failure to develop the record is warranted, however, only where the failure is unfair or prejudicial. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

*Vision Impairment*

In a June 30, 2010 letter, Mr. Standridge's treating physician, Dr. Sami H. Uwaydat, wrote that he could not complete the vision impairment residual functional

capacity questionnaire until Mr. Standridge returned for a follow-up appointment to check if further improvements could be made in his vision. (Tr. 270) Mr. Standridge argues that the ALJ failed to develop the record based on Dr. Uwaydat's statement and based on the fact that the ALJ did not authorize a return examination to the treating physician or new examining source.

A further opinion as to whether Mr. Standridge's vision could be improved, however, is not determinative in this case. The record contains sufficient evidence otherwise to determine Mr. Standridge's ability to work. The ALJ adequately developed the record, and Mr. Standridge's claim in connection with his vision impairment fails.

The ALJ considered Mr. Standridge's vision impairment under Listings 2.02, 2.03 and 2.04, and concluded that his condition did not satisfy the severity requirements of the listed impairment: remaining vision in the better eye after best correction was 20/200 or less; or visual efficiency of the better eye of 20 percent or less after best correction; or visual field in the better eye with the widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or a mean deviation of -22 or worse; or a visual field efficiency of 20 percent or less as determined by kinetic perimetry. (Tr. 12)

The ALJ considered all medical evidence in connection with Mr. Standridge's vision impairment. After Mr. Standridge injured his eye on November 28, 2009 and underwent a CT scan, Dr. Inci Dersu diagnosed him with a ruptured globe of the right

7

eye, hephema, and a rupture of the lens of the right eye. (Tr. 15) Mr. Standridge underwent surgery that same day and was discharged the following day. (Tr. 15)

During a December 7, 2009 follow-up visit with Dr. Uwaydat, Mr. Standridge was able to see colors of light, bright lights, and inferiorly, but with blurred vision. (Tr. 15) At a January 13, 2010 follow-up visit, Mr. Standridge reported that he had peripheral vision. However, Dr. Uwaydat determined that Mr. Standridge had a dense membrane pulling the ciliary body centrally and recommended surgery. (Tr. 15-16)

On February 18, 2010, Mr. Standridge underwent further surgery. (Tr. 16) At his February 24, 2010 follow-up appointment, Mr. Standridge reported that he was able to see better than at the last visit. (Tr. 15-16) In April, 2010, Dr. Uwaydat noted that Mr. Standridge was doing well and exhibited 20/20 vision in his left eye and 20/CF@1.5 in his right eye.

The ALJ concluded that while Mr. Standridge's vision impairment was severe, it was not disabling. (Tr. 16) He noted that Mr. Standridge had good vision in his left eye, and some vision in his right eye. (Tr. 16) He further noted that Mr. Standridge was able to drive, shop, put away dishes, sweep the floor, and watch television. (Tr. 16)

The ALJ gave substantial weight to the medical opinions of physicians treating Mr. Standridge's eye injury. (Tr. 17; 205-42; 246-262; 266-69; 270-310) Based on the medical evidence and Mr. Standridge's activities, the ALJ found that Mr. Standridge could see well enough to avoid hazards in the workplace and to distinguish between

shapes and colors of objects, such as screws, nuts, and bolts. (Tr. 16) The ALJ noted that the record contained no medical opinion that Mr. Standridge was disabled or had limitations greater than those determined in the ALJ's decision.

The ALJ further found that Mr. Standridge's statements about the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that those statements were inconsistent with the residual functional capacity assessment. (Tr. 16) The ALJ found the following detrimental to Mr. Standridge's credibility: (1) Mr. Standridge did not complete his treatment with Dr. Uwaydat; (2) the lack of evidence that Mr. Standridge ever tried a visual aid; (3) the fact that Mr. Standridge took no medication; and (4) Mr. Standridge had not sought help from a charitable organization. (Tr. 16)

*Back Injury*

Plaintiff asserts that the key to this appeal is that only hip x-rays were authorized and performed -- when Mr. Standridge was not alleging a left hip injury, but a spinal injury -- which rendered the record void of medical evidence in connection with Mr. Standridge's spinal injury. (#10, at 8) The record, however, shows that Mr. Standridge *did* allege a hip injury.

In the Disability Determination for Social Security Pain and Other Symptoms form, he described the location of his pain as back, hip, leg, and head. (Tr. 181) He testified that the gunshot wound to his left leg affected his ability to walk, and affected

9

both his hip and back.  (Tr. 30)  He also testified that doing anything in the garden affected his back and hip; that his hip "locks up" when he tried to rise from a kneeling position.  (Tr. 32)  At the hearing, the ALJ noted the scant medical evidence regarding Mr. Standridge's injury and granted his motion for an orthopedic examination.  (Tr. 52)  The additional services authorized were an x-ray of the left hip, complete, minimum of two views, and an orthopedic exam with narrative report.  (Tr. 311)  The two x-rays indicated that Mr. Standridge had a normal left hip.  (Tr. 314)  Dr. Ted Honghiran's examination showed that Mr. Standridge had complete range of motion in his left hip, but with pain.  (Tr. 314)

In connection with Mr. Standridge's alleged back injury, Dr. Ted Honghiran found that Mr. Standridge showed painful range of motion of the lumbar spine.  (Tr. 314)  He could flex to 90 degrees with no extension, and bend side to side to 10 degrees only.  (Tr. 314)  He had increasing pain on straight leg raise of the left leg, and normal reflex and sensation in both knees and ankles.  (Tr. 314)  Dr. Honghiran found no muscle atrophy.  Dr. Honghiran recommended that Mr. Standridge get an MRI scan of his lumbar spine, and possible surgery if needed.  In Dr. Honghiran's opinion, Mr. Standridge was not able to do any work of any kind at the time of the examination.

The ALJ gave little weight to Dr. Honghiran's opinion regarding Mr. Standridge's ability to work because the opinion was not supported by the findings of Dr. Honghiran's physical examination or the objective medical evidence.  (Tr. 17)  *Krogmeier v. Barnhart*,

294 F.3d 1019, 1023 (8th Cir. 2002) (when treating physician's opinion is inconsistent with medical evidence, opinion is not entitled to deference). The ALJ noted that Dr. Honghiran's opinion was an administrative finding that is determinative of this case, and, as such, is reserved to the Commissioner. *See id.* (statements of a treating physician that a claimant cannot be gainfully employed are opinions under the sole discretion of the Commissioner). Considering the medical evidence, along with Mr. Standridge's own statements of his activities, the record contained enough evidence to determine the effect of Mr. Standridge's impairment on his ability to work.

    D.    *Alleged Mental Impairment*

Mr. Standridge alleges that the ALJ erred at step two by not evaluating the severity of his alleged mental impairment using the special technique set out in 20 C.F.R. § 1520a. (#10, at 9) At step two, the ALJ addressed Mr. Standridge's alleged mental impairment as follows: "The claimant also alleges depression . . . . However, the undersigned finds that said conditions were not objectively corroborated and do not impact his ability to perform significant work-related activities more than minimally." (Tr. 12)

Here, even if the ALJ erred in not using the special technique, the error was harmless. While an ALJ should follow the technique in evaluating a mental impairment, at step two, the burden is on the claimant to show that he is severely impaired. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Mr. Standridge submitted no evidence in connection with his alleged mental impairment. There is no evidence that he ever sought

treatment for depression. While Mr. Standridge may not have the financial resources available to seek medical care, there is no evidence that he ever received charitable medical services for depression, or was denied medical help for financial reasons. Further, the medical reports in the record that note Mr. Standridge's mental state do not indicate that he displayed symptoms of depression. (Tr. 207, 238) The record as a whole supports the ALJ's assessment.

  E. *Credibility Determination*

  Mr. Standridge argues that the ALJ failed to perform a proper credibility assessment. (#10, p. 10) Under 20 C.F.R. §§ 404.1529 and 416.929, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are consistent with the objective medical evidence. An ALJ's conclusions may be upheld if the record as a whole supports them. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

  In connection with Mr. Standridge's alleged spinal injury, the ALJ found that Mr. Standridge's "allegations regarding his pain and limitations are so extreme as to appear implausible." (Tr. 14) The ALJ noted that Mr. Standridge allegedly suffered constant back, hip, and leg pain. (Tr. 14) The ALJ further noted that Mr. Standridge's symptoms were unsupported by the medical evidence. He discussed an x-ray of Mr. Standridge's lumbar spine that was interpreted as negative. (Tr. 14) He pointed out that Mr. Standridge never returned for treatment for his spinal injury, although he was


instructed to do so if he saw no improvement. (Tr. 14) He acknowledged Mr. Standridge's financial constraints, but noted the lack of evidence that Mr. Standridge ever sought help through charitable organizations. (Tr. 14) He noted Dr. Honghiran's observation that Mr. Standridge walked with a severe limp, but also that he walked without the help of an assistive device. (Tr. 14)

      The ALJ noted Mr. Standridge's substantial daily activities: mowing the lawn; housework; hanging laundry; putting up dishes; sweeping; vacuuming; driving a vehicle; and preparing meals. He further noted that Mr. Standridge testified that he injured his back at age 16 and injured his leg several years earlier, but continued to work with the impairments that he now claims render him unable to work. (Tr. 16) The ALJ found that the severity of the symptoms Mr. Standridge described was unsupported by his self-described activities of daily life.

      In connection with Mr. Standridge's vision impairment, the ALJ acknowledged that the impairment was severe. (Tr. 16) He found that the impairment was not disabling, however, because Mr. Standridge enjoyed good vision in his left eye and remained capable of many daily activities. (Tr. 16) The ALJ discredited Mr. Standridge's statements about the intensity, persistence, and limiting effects of his symptoms. He noted that Mr. Standridge failed to avail himself of available countermeasures. He also noted that despite alleged severe pain, Mr. Standridge took no pain medication. (Tr. 16)

The ALJ discussed many of the factors relevant to credibility. See *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) (objective medical evidence, prior work history, daily activities, duration, frequency, and intensity of pain, precipitating or aggravating factors, dosage, effectiveness, and side effects of medication, and functional restrictions are all factors to consider when assessing the credibility of a claimant's subjective allegations). The ALJ is not required to discuss each *Polaski* factor as long as he acknowledges and considers the factors before discounting a claimant's subjective complaints. *Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010) (citing *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). The record as a whole supports the ALJ's conclusions. This Court cannot find error in the ALJ's credibility determination.

  F. *RFC Determination*

Mr. Standridge argues that due to the ALJ's failure to develop the record, his RFC is flawed. (#10, p. 12) As explained, this Court finds no failure by the ALJ in developing the record. Further, the ALJ noted the findings of both Dr. Honghiran and Dr. Uwaydat, and based his RFC on Mr. Standridge's limitations.

The ALJ bears the initial responsibility for assessing a plaintiff's RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). The RFC is what a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945 (2003). The ALJ has a duty to establish the physical and mental activities that a plaintiff can perform in a work setting, after giving appropriate consideration to all of his or her impairments. *Ostronski v. Chater*, 94

F.3d 413, 418 (8th Cir. 1996).  The ALJ must determine the plaintiff's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and plaintiff's own descriptions of his or her limitations.  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

In making his RFC determination, the ALJ considered all symptoms to the extent to which they were reasonably consistent with the objective medical evidence and other evidence, as required by 20 C.F.R. § 416.929 and SSRs 96-4p and 96-7p.  He also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  (Tr. 13)

The ALJ considered that Mr. Standridge was treated for back pain in 2007, that the physical examination revealed pain with extension and flexion and some mild tenderness across the lumbar spine, and that an x-ray of his lumbar spine was interpreted as negative. (Tr. 14)  Dr. Finley Turner diagnosed "lumbrosacral with right radiculopathy."  (Tr. 14) Because of the sparse medical evidence in connection with Mr. Standridge's back injury, the agency requested an orthopedic examination.

Dr. Honghiran's examination showed a reduced range of motion in Mr. Standridge's lumbar spine, and x-rays showed a normal left hip.  (Tr. 14) Dr. Honghiran diagnosed Mr. Standridge with chronic pain in the lower back and left leg pain, most

likely from degenerative disc disease and herniated disc in nature. Dr. Honghiran recommended an MRI of Mr. Standridge's lumbar spine. (Tr. 14)

Considering Mr. Standridge's admitted activities (he mows the lawn, helps with housework, hangs the laundry, puts up dishes, sweeps, vacuums, prepares meals, and drives a vehicle) together with the medical evidence, the ALJ found that Mr. Standridge's RFC should include work where he may occasionally be required to lift and carry items weighing 20 pounds, and frequently carry items weighing 10 pounds.

The ALJ acknowledged Mr. Standridge's allegation that he is unable to stand, walk, and/or sit any length of time without pain, but noted that Mr. Standridge indicated that he sits in his recliner for most of the day. (Tr. 15) Alluding to his earlier finding that the severity of Mr. Standridge's back, hip, and leg pain were unsupported by the medical evidence and Mr. Standridge's daily activities, the ALJ found that Mr. Standridge's RFC should include work where he may be required to sit, stand, and/or walk for about six hours of an eight-hour workday.

Again finding that Mr. Standridge's alleged limitations were not supported by his admitted activities, in particular caring for six dogs, attending church services, driving a vehicle with no power steering, vacuuming, and mowing the lawn, the ALJ determined that Mr. Standridge's RFC may include frequent climbing, balancing, crawling, kneeling, stooping, and crouching. (Tr. 15)

In connection with Mr. Standridge's vision impairment, the ALJ discussed the medical history in detail.  The ALJ noted how and when the injury occurred, that a CT scan revealed that Mr. Standridge's right eye had a ruptured globe and contained a small foci of air, and that the lens was not seen and was felt to have been dislocated or extruded.  (Tr. 15)  Mr. Standridge was diagnosed with a ruptured globe of the right eye, hephema, and a rupture of the lens in the right eye for which he underwent surgery to correct.  (Tr. 15)

The ALJ took into account that on Mr. Standridge's follow-up visits he could see colors of light, bright lights, and inferiorly, but that his right-eye vision was blurry (December 7, 2009 visit), and that he had peripheral vision in his right eye (January 13, 2010 visit).  However, Dr. Uwaydat recommended further surgery to correct a dense membrane pulling the ciliary body centrally.  (Tr. 15-16)  Mr. Standridge underwent the additional surgery, and on a follow-up visit on February 24, 2010, he reported that he was able to see a little better than he had been able to on his last visit.  (Tr. 16).  Dr. Uwaydat last saw Mr. Standridge in April, 2010, and noted that he was doing well post surgery, with 20/20 vision in his left eye and 20/C@1.5 vision in his right eye.

Considering both the medical evidence and Mr. Standridge's admitted activities, the ALJ found that Mr. Standridge's RFC may not include work that requires him to have excellent vision, but that he is well enough to avoid workplace hazards and to distinguish between shape and color of objects like screws, nuts, and bolts.  (Tr. 15)

There is little to no evidence that would support physical limitations precluding Mr. Standridge's performance of this work. The ALJ's mental and physical RFC findings are supported by substantial evidence in the record. The primary evidence supporting further limitations was Mr. Standridge's subjective complaints, which the ALJ found to be less than fully credible.

## IV.   Conclusion

The Court has reviewed all of the evidence in the record, including the medical evidence, the assessment of the consulting physician, and the hearing transcript. There is sufficient evidence in the record as a whole to support the Commissioner's determination that Dallas Standridge retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, this appeal is DENIED, and the Clerk of Court is directed to close the case, this 9th day of October, 2012.

_____
UNITED STATES MAGISTRATE JUDGE